IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE SZTROIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. A. No. 17-665 |
| ) | Judge Nora Barry Fischer |
| ) | |
| PENNWEST INDUSTRIAL TRUCK, LLC, ) | |
| and MARK GAIER, an individual, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

I.    INTRODUCTION

Presently before the Court is Defendants PennWest Industrial Trucks, LLC[1] ("PennWest") and Mark Gaier's ("Defendant Gaier") (collectively "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and brief in support thereof, (Docket Nos. 12, 14); Plaintiff Denise Sztroin's ("Plaintiff") Brief in Opposition, (Docket No. 19); and Defendants' Reply Brief, (Docket No. 20). Defendants seek the dismissal of all claims asserted by Plaintiff in her May 22, 2017 Complaint against PennWest and Defendant Gaier. (Docket No. 12, p. 1). Count One of Plaintiff's Complaint is a claim of disparate treatment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Pennsylvania Human Relations Act 34 of 1997 ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. §§ 951-963, Count Two is a claim for sexual harassment/ hostile work environment under Title VII and the PHRA, and Count Three is a claim of disparate impact under Title VII and the PHRA. This Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28

---

[1]     There appears to be a typographical error in the caption; it should read "Trucks" and not the singular "Truck".

U.S.C. §§ 1331 (federal question) and 1367(a) (supplemental jurisdiction). After careful consideration of the parties' positions and for the following reasons, Defendants' Motion will be granted, in part and denied, in part.

II.    BACKGROUND

Plaintiff was the Service Operations Manager at PennWest from February 21, 2011, until September 30, 2015. (Docket No. 1 at ¶ 9). In this role, Plaintiff reported to Defendant Gaier, the President of PennWest. (*Id.* at ¶¶ 8, 9). Defendant Gaier's wife, Elizabeth Gaier ("Mrs. Gaier"), was also on PennWest's payroll, attended PennWest's offices on a weekly basis, and participated in PennWest meetings with PennWest employees, customers, and vendors. (*Id.* at ¶¶ 11, 12).

Beginning in August 2012, Defendant Gaier began to treat Plaintiff differently than her male counterparts. (*Id.* at ¶ 13). Defendant Gaier would avoid eye contact with Plaintiff in the workplace and excluded her from meetings, which directly involved the scope of her job and her subordinate employees. (*Id.* at ¶¶ 14-15). Often times, Defendant Gaier directed Plaintiff's subordinate employees to relay important information to Plaintiff. (*Id.* at ¶ 16). In August 2013, PennWest's Vice President of Sales and Services, Gerald R. Clemence, instructed Plaintiff that she was no longer allowed to go into Defendant Gaier's office or to address Defendant Gaier directly in the workplace. (*Id.* at ¶ 17). Clemence explained that Defendant Gaier wanted to receive information through Clemence rather than directly from Plaintiff. (*Id.* at ¶ 18). Plaintiff was the only employee of her level of authority directed to communicate through Clemence, and male subordinates of hers frequently spoke directly with Defendant Gaier. (*Id.* at ¶ 19).

In early 2014, her office was relocated to a smaller cubical further away from Defendant Gaier's office. (*Id.* at ¶ 20). Then on April 14, 2014, during a meeting, Defendant Gaier directed

2

Plaintiff not to have any contact with him including through email. (*Id.* at ¶ 21). After the meeting, Plaintiff asked Clemence whether she had done something wrong and whether she should look for a new job. (*Id.* at ¶ 22). Three days later, however, Defendant Gaier entered her cubicle and asked her to do an assignment because he knew he could count on her to get the job done. (*Id.* at ¶ 25). When he left her cubicle, Defendant Gaier stated, "I was never here. You didn't see me." (*Id.* at ¶ 26).

In August 2014, Plaintiff was notified that she would be attending a meeting with Clemence and Defendant Gaier to meet with one of the company's major clients but that changed the morning of the meeting when she was notified that she would no longer be attending. (*Id.* at ¶¶ 27-28).

On October 2, 2014, Defendant Gaier terminated Plaintiff. (*Id.* at ¶ 29). During the conversation, Defendant Gaier informed Plaintiff that she was an excellent employee, explained that his wife did not approve of him working closely with female employees, and explained that he was terminating her solely due to Mrs. Gaier's attitude towards women. (*Id.* at ¶¶ 29-30). At lunch later that day, Clemence reiterated that Plaintiff was terminated because Mrs. Gaier was upset that Defendant Gaier worked with a female. (*Id.* at ¶¶ 31-32). Clemence informed Plaintiff that she was no longer fired and could return to her position with an $8,000 raise. (*Id.* at ¶ 33). Plaintiff returned to her position a week later, and two weeks thereafter, Mrs. Gaier confronted Plaintiff and apologized for how Defendant Gaier treated Plaintiff. (*Id.* at ¶¶ 34, 35). Mrs. Gaier embraced Plaintiff and firmly pressed her breasts against Plaintiff in a manner that made Plaintiff feel uncomfortable and intimidated. (*Id.* at ¶ 36).

For a brief time after she returned, Defendant Gaier communicated directly with Plaintiff in the workplace. (*Id.* at ¶ 37). In early 2015, Defendant Gaier began avoiding eye contact with

Plaintiff and excluding her from meetings. (*Id.* at ¶¶ 38-40). Throughout 2015, Plaintiff had little contact with Defendant Gaier. (*Id.* at ¶ 41). Thereafter, Plaintiff was informed by another employee that Mrs. Gaier had commented that she wanted Plaintiff fired. (*Id.* at ¶ 42). Plaintiff sought out professional treatment for anxiety for the stress she endured as a result of the working conditions she faced. (*Id.* at ¶ 43). On September 30, 2015, Clemence fired Plaintiff over the phone and told her that she was being terminated because she was a woman and Mrs. Gaier did not want Defendant Gaier to work closely with women. (*Id.* at ¶¶ 44-45). Clemence specifically told Plaintiff that Mrs. Gaier was upset that Plaintiff had been included on an email that was sent to Defendant Gaier regarding the progress of a recently hired employee. (*Id.* at ¶ 46). Plaintiff was replaced by a male employee. (*Id.* at ¶ 49). Plaintiff further states that Defendant Gaier has treated other female employees differently than male employees. (*Id.* at ¶ 50).

On February 8, 2016, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") and cross-filed the claim with the Pennsylvania Human Relations Commission ("PHRC"). (*Id.* at ¶ 53). On November 9, 2016, the EEOC determined that PennWest's treatment and termination of Plaintiff was unlawful. (*Id.* at ¶ 54). The EEOC provided PennWest the opportunity to voluntarily remedy their practices by February 8, 2017. (*Id.* at ¶ 55). On February 21, 2017, the EEOC sent Plaintiff a Notice of Right to Sue. (*Id.* at ¶ 56). On May 2, 2017, Plaintiff received her right to sue from the PHRA. (*Id.* at ¶ 57).

Plaintiff filed her Complaint in this Court on May 22, 2017. (Docket No. 1). Defendants submitted their Motion to Dismiss and Brief in Support on July 21, 2017. (Docket Nos. 12, 14). Plaintiff countered with her Brief in Opposition on August 16, 2017. (Docket No. 19). Defendants filed their Reply Brief on August 29, 2017. (Docket No. 20). As all briefing has concluded, the Motion is fully briefed and ripe for disposition.

IV.     LEGAL STANDARD

A court may dismiss a claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a Fed. R. Civ. P. 12(b)(6) motion, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

The plaintiff must plead "enough factual matter" to "'nudge [his or her] claims across the line from conceivable to plausible.'" *Phillips*, 515 F.3d at 234-35 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007) (alteration in original)). All that is required is that the plaintiff's complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation omitted), in order to " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' " *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration in original)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

When reviewing the sufficiency of a complaint, the trial court must undertake three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). "First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675) (alterations in original). "Second, it should identify allegations that, 'because they are no more

5

than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "[T]he clearest indication that an allegation is conclusory and unworthy of weight . . . is that it embodies a legal point." *Id.* at 790. "Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 787 (quoting *Iqbal*, 556 U.S. at 679) (alterations in original).

V. DISCUSSION

Title VII's anti-discrimination policy makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Similarly, the PHRA makes it "an unlawful discriminatory practice . . . [f]or any employer because of the . . . sex . . . of any individual . . . to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual." 43 PA. STAT. AND CON. STAT. ANN. § 955(a).

*A. Count One – Disparate Treatment*

In her Complaint, Plaintiff asserts a claim for disparate treatment under Title VII and the PHRA against both defendants. (Docket No. 1). Plaintiff avers that she is a member of a protected class under Title VII and the PHRA; that she was qualified for her position as the Service Operations Manager at PennWest; that Defendants treated her in a disparate manner in comparison with male employees; that Plaintiff suffered an adverse employment action when she was fired by PennWest because she was a woman; that Defendant Gaier employs a patently discriminatory policy that women cannot work in management positions or in positions where

6

they will work closely with him; and that Plaintiff was replaced by a male employee. (*Id.* at ¶¶ 59-65).

Defendants argue that Plaintiff has failed to state a claim because an employer may lawfully terminate an employee due to spousal jealousy, and, consequently, Plaintiff was lawfully terminated because Mrs. Gaier did not approve of Defendant Gaier, her spouse, working closely with Plaintiff. (Docket No. 14 at 5, 8). Plaintiff responds that the instant case is different from the jealousy cases referenced in Defendants' brief because no women were allowed to work with Defendant Gaier. (Docket No. 19 at 6). In Defendants' reply brief, they continue to maintain that the facts as pled indicate that jealousy undergirded Defendants' decision to terminate Plaintiff and support this supposition using part of the EEOC charge. (Docket No. 20 at 2-3). In addition, Defendants argue that Plaintiff is not required to have a personal relationship with Defendant Gaier in order for jealousy to be a valid reason for her termination and that jealousy is not a "defense" and is properly raised early in a Rule 12(b)(6) motion. (*Id.* at 4).

The legal standard for disparate treatment is the same under Title VII and the PHRA; therefore, they will be addressed together. *Connelly*, 809 F.3d at 791 n.8. A Title VII disparate treatment plaintiff may make a claim under either the pretext or mixed-motive theories. *Id.* at 787. However, at this stage of litigation, plaintiff need not decide "whether she is proceeding under a mixed-motive or pretext theory, nor[sic] is she required to establish a prima facie case." *Id.* at 791. In order to survive a Fed. R. Civ. P. 12(b)(6) motion on a claim for disparate treatment, Plaintiff need only set forth sufficient facts to raise a reasonable expectation that

discovery will reveal evidence that Plaintiff was a member of a protected class and that she suffered an adverse employment action. *See id.* at 791.[2]

As stated above, Defendants maintain that spousal jealously permits an employer to terminate an employee. Neither the Court of Appeals for the Third Circuit nor the United States Supreme Court have spoken directly on this issue. The persuasive precedent cited by Defendants, demonstrates that those courts that have found spousal jealousy to be a lawful reason to terminate an employee have found so only where the spouse was jealous of a particular individual, not where the spouse was jealous of an entire sex. *See Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 904-06 (11th Cir. 1990) (finding no disparate treatment where in the interest of nepotism, the employer terminated a female employee who was rumored to be in a nefarious relationship with his married son); *Campbell v. Masten*, 955 F. Supp. 526, 529 (D. Md. 1997) (granting defendant's motion for summary judgment finding that the terminated female employee was fired due to personal animosity due to her affair with her boss and not her gender explaining that "[a]n employee who chooses to become involved in an intimate affair with her employer, however, removes an element of her employment relationship from the workplace"); *Falconer v. Papco, Inc.*, 2008 WL 2486128, at *5 (W.D. Pa. June 17, 2008) (unpublished) (explaining that "given the absence of gender-driven animus", "[p]laintiff's claim that her precipitous and quite unexpected termination was the product of Pierce's jealousy fueled by a rumor of an affair is insufficient to support a Title VII gender discrimination claim"); *Nelson v. James H. Knight DDS, P.C.*, 834 N.W.2d 64, 66-67, 70-71 (Iowa 2013) (interpreting

---

[2] In *Connelly v. Lane Construction Company*, the Court of Appeals for the Third Circuit clarified that in order for a disparate treatment claim to survive a Fed. R. Civ. P. 12(b)(6) motion, the plaintiff must set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that Plaintiff was a member of a protected class and that she suffered an adverse employment action. 809 F.3d 780, 791 (3d Cir. 2016). The court explained that to survive a motion to dismiss the movant need not establish a prima facie case as "[a] *prima facie* case is an evidentiary standard, not a pleading requirement." *Id.* at 788-89 (internal citation and quotation omitted). All that is required is that a plaintiff "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

an analogous statute in the Iowa Code, the Supreme Court of Iowa found that the plaintiff's termination was not due to gender alone because her employer had terminated her due to his wife's concern about his lustful feelings towards the plaintiff).[3] Thus, jealousy is not a lawful explanation for termination under Title VII where the spouse was not jealous of a particular plaintiff but rather was jealous of an entire gender and whether Plaintiff has a viable claim will turn on the facts as alleged in Plaintiff's Complaint.

The relevant facts as stated in Plaintiffs' Complaint are: (i) she is a woman, (ii) she was qualified for her position as the Service Operations Manager at PennWest; (iii) she was treated in a disparate manner by Defendant Gaier and his wife because Plaintiff is a woman; (iv) she was ultimately fired on September 30, 2015, because she was a woman; and that (iv) she was replaced by a male co-worker. (Docket No. 1 at ¶¶ 9, 10, 13-65). Whether she was qualified or treated in a disparate manner are conclusions of law and must be disregarded. Plaintiff's allegation that she was fired because she was a woman sounds, at first blush, like it is a conclusion of law; however, when read in light of paragraph 45, it is a statement of fact. Paragraph 45 also explains that Mrs. Gaier did not want Defendant Gaier to work closely with any women. *Id.* The facts alleged in Plaintiff's EEOC charge are consistent with the facts as pled in the Complaint. When read in the light most favorable to the Plaintiff, the salient facts provide, "Clemence said that Mrs. Gaier did not want her husband to look or talk to *other women*, and the fact that [Plaintiff] was 'a woman who worked closely with her husband made [Mrs. Gaier] crazy.'" (Docket No. 20 at 3) (second alteration in original) (emphasis added).[4]

---

[3] Defendants also reference *Jura v. County of Maui*, 2012 WL 6728057 (D.C. Haw. Dec. 27, 2012) (unpublished); however, the court in that case was addressing a motion for reconsideration and there is scant information regarding the factual allegations in the case and de minimis legal analysis.

[4] Courts generally cannot consider evidence when deciding a Fed. R. Civ. P. 12(b)(6) motion. Fed. R. Civ. P. 12(d). One exception to this Rule is where the document is "integral to or explicitly referred to in the complaint." *In re: Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (internal citation and quotation omitted). The scope of a Title VII civil action is limited by the EEOC investigation. *Barzanty v. Verizon PA, Inc.*, 361 Fed.Appx. 411,

Accepting the facts as pled as true, Plaintiff's allegations raise a reasonable expectation that discovery will reveal evidence that Plaintiff's protected status played either a motivating or determining factor in PennWest's decision to terminate her. Accordingly, Plaintiff has sufficiently pled a disparate treatment claim to defeat a motion to dismiss.[5]

*B. Count Two – Sexual Harassment/ Hostile Work Environment*

In Count Two, Plaintiff asserts a claim for sexual harassment and hostile work environment under Title VII and the PHRA against both defendants. (Docket No. 1). Plaintiff avers that Defendants consistently treated her differently from the male employees; they excluded her from necessary meetings and communications essential to perform her job; at the same time, Defendant Gaier routinely met with male subordinate employees and asked them to covey messages to Plaintiff; Defendant Gaier chastised Plaintiff for speaking with him and directed her to avoid contact with him; Plaintiff was temporarily terminated by Defendants on October 2, 2014, because she was a woman; and following Plaintiff's temporary termination, Mrs. Gaier engaged Plaintiff in an uncomfortable and intimidating embrace. (Docket No. 1 at ¶¶ 66-73). Furthermore, Plaintiff alleges that as a direct and proximate result of Defendants' actions, she suffered lost wages, mental anguish, anxiety, personal humiliation, embarrassment, and disruption to her personal life. (*Id.* at ¶ 79).

Defendants argue that Plaintiff has failed to set forth a prima facie claim of sexual harassment and hostile work environment because of all of the following: she cannot establish that she suffered "intentional discrimination because of sex" as the perceived jealousy of Defendant Gaier's wife cannot support such a claim; Plaintiff has not alleged that the conduct

---

414 (3d Cir. 2010) (citing *Hicks v. ABT Assoc.*, 572 F.2d 960, 966 (3d Cir. 1978)). Thus, considering the EEOC charges falls within this exception.

[5] Moreover, unlike the cases cited by the Defendants, PennWest had already ensured that Plaintiff had no contact with Defendant Gaier and was for all intents and purposes not working with him; thus, it raises a serious question as to whether jealousy really was a factor.

was "pervasive and regular", Plaintiff has not adequately pled that Defendants' actions amounted to a change in the terms and conditions of her employment; and Plaintiff has not claimed that the working environment detrimentally affected her ability to perform her job duties. (Docket No. 14 at 10-11). Plaintiff responds that she was systematically shunned by her boss for three years, she was precluded from interacting with her subordinate employees and important clients as a result of being prohibited from interacting with Defendant Gaier and references two specific instances of conduct that clearly colored all of the shunning she experienced as conduct undertaken because of sex - she was temporarily terminated because she was a woman and her uncomfortable encounter with Mrs. Gaier. (Docket No. 19 at 10-12). Moreover, Plaintiff alleges that the allegations are of sufficient quantity and quality to plead a hostile work environment. (*Id.* at 12). Finally, Plaintiff argues that as a result of being shunned, she has undergone treatment for anxiety. (*Id.* at 13). Defendants reply that Plaintiff's claim is insufficiently pled because Plaintiff does not allege that she was excluded from all client meetings, that she was prohibited from meeting with her subordinates, or that in any way she was precluded from meeting with other managers. (Docket No. 20 at 7). Additionally, Plaintiff has failed to allege how having her office moved in any way effected the performance of her job duties. (*Id.* at 7-8).

"Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (alteration in original)). To establish a claim for discrimination based on hostile work environment and employer liability, plaintiff must demonstrate that: "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the

plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence *of respondeat superior liability.*" *Id.* When considering whether discrimination is severe or pervasive courts look at the totality of the circumstances including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 168 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

"Courts in this Circuit have . . . 'shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive.'" *Booker v. Nat'l R.R. Pass. Corp.*, 880 F. Supp. 2d 575 (E.D. Pa. 2012) (quoting *Grasty v. World Flavors, Inc.*, 2011 WL 3515864, at *9 n.2 (E.D. Pa. Aug. 11, 2011)) (unpublished). A single incident can be sufficiently severe to satisfy this element; however, the incident must amount to a "'change in the terms and conditions of employment.'" *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)). Whether occasional instances are pervasive is a question that can only be answered after discovery. *Id.* at 266. PHRA claims are interpreted "coextensively with Title VII claims." *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006); *see Jennings-Fowler v. City of Scranton*, 680 Fed. Appx. 112, 117 (3d Cir. Feb. 23, 2017) (unpublished). "An employer is liable for a hostile work environment where it knows, or should have known, of the harassment, and fails to take prompt and adequate remedial action". *Winkler v. Progressive Bus. Publ'ns*, 200 F. Supp. 3d 514, 519 (E.D. Pa. 2016).

Plaintiff avers that she was told by her superiors that she was being treated differently from her male counterparts because of her gender. (Docket No. 1 at ¶¶ 66-73). At this juncture,

12

that is sufficient to fulfill the requirement to plead the first element that she was subject to intentional gender discrimination. See *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243-44 (E.D. Pa. 2014) (unpublished). As to the second element, the facts as pled provide that Plaintiff was ignored by her supervisor in different ways for years, she was excluded from meetings and was even terminated once before being rehired, all of which was because of her gender. The facts as pled are sufficient to raise a reasonable expectation that discovery will reveal evidence to support this element especially considering courts' reluctance to dismiss a complaint at the 12(b)(6) stage based on the severe or pervasive requirement. See *Spain v. Gallegos*, 26 F.3d 439, 449 (3d Cir. 1994) (finding that rumors of an interoffice relationship coupled with co-workers treating their female colleague differently over a four-year period was a fact question for trial as to the pervasiveness and regularity); *Sadler v. Cty. of Bedford*, 2013 WL 3071743, at *1-2, 5 (W.D. Pa. June 18, 2013) (unpublished) (finding that allegations that the plaintiff's supervisor would choose to speak with men over women, speak to women in a derogatory manner, and refuse to speak to female employees was sufficiently pled as to the element of "severe or pervasive" to survive a motion to dismiss); *Burlingame v. Pretium Packaging*, 2006 WL 2302375, at *4 (M.D. Pa. Aug. 8, 2006) (unpublished) (finding that plaintiff had sufficiently pled a hostile environment claim where Behm refused to work with or speak to female employees and male employees routinely discussed female employees).

In addition, the discrimination clearly was detrimental to Plaintiff in that she sought medical treatment for anxiety and a reasonable person may have done so similarly. (Docket No. 1 at ¶ 43). Defendant Gaier who is at the center of these allegations is the President of PennWest and her supervisory coworker; therefore, Plaintiff has sufficiently pled employer liability. (Docket No. 1 at ¶¶ 8, 9). Reviewing the facts in the light most favorable to Plaintiff, these facts

could support a finding that Plaintiff suffered intentional discrimination because of her gender, which was severe or pervasive, that the discrimination detrimentally affected Plaintiff as it would have affected any reasonable person of the same gender in her position, and the existence *of respondeat superior liability*. Thus, Plaintiff has pled sufficient facts to state a plausible hostile work environment claim. See *Castleberry,* 863 F.3d at 264.

    C.    *Count Three – Disparate Impact*

In Count Three, Plaintiff asserts a claim of disparate impact under Title VII and the PHRA. (Docket No. 1). Plaintiff alleges that Defendants frequently implemented employee policies at the advisement of Mrs. Gaier, including a policy that caused individuals identified by Mrs. Gaier to be treated differently than their peers and to be placed in hostile work environments; that the policies implemented by Defendants operated to exclude female employees from management and other positions and even to exclude them from employment at PennWest altogether; that Plaintiff was repeatedly reprimanded and excluded from Defendant Gaier as a result of these policies; and that Plaintiff was ultimately terminated as a result of these policies. (*Id.* at ¶¶ 80-84). Defendants, however, argue that Plaintiff's claims were insufficiently pled because she failed to set forth a facially neutral employment practice or policy that creates a disparate impact because of sex and because Plaintiff failed to plead any statistical evidence. (Docket No. 14 at 12-13). Plaintiff responds that Defendant Gaier employs a policy of allowing Mrs. Gaier to make personnel decisions at PennWest and that Mrs. Gaier's participation in personnel decisions as a result of this policy adversely affects female employees at PennWest. (Docket No. 19 at 13). Plaintiff further maintains that Mrs. Gaier's involvement in personnel decisions adversely affects women. (*Id.*) Defendants counter that the policy does not amount to

a specific employment practice and Plaintiff still has not put forth any statistical evidence. (Docket No. 20 at 8-9).

The legal standard for disparate impact is the same under Title VII and the PHRA; therefore, both claims will be addressed together. *Bogaski v. Cty. of Allegheny, Pa.*, __ F. Supp. 3d __, 2017 WL 1080084, at *3 n.2 (W.D. Pa. Mar. 22, 2017) (unpublished). Disparate impact discrimination occurs where an employer utilizes "'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another.'" *United States v. Pa.*, 110 F. Supp. 3d 544, 549 (M.D. Pa. 2015) (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)); *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011). In these cases, the employer acts without a deliberately discriminatory motive. *Pennsylvania*, 110 F. Supp. 3d at 549. To survive a motion to dismiss, Plaintiff must plead that PennWest had a facially neutral policy, which caused adverse effects to a protected group under Title VII. *See Pa.*, 110 F. Supp. 3d at 553 (citing *Ladd v. Boeing Co.*, 463 F. Supp. 2d 516, 521 (E.D. Pa. 2006)). Plaintiff need not come forth with evidence at this juncture because "[u]nder the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." *Id.* at 553 (quoting *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999)).

According to Plaintiff, the specific employment practice allegedly creating a disparate impact is that "Defendants frequently implemented employee policies at the advisement of Mrs. Gaier, including a policy that caused individuals identified by Mrs. Gaier to be treated differently than their peers and to be placed in hostile work environments." (Docket No. 1 at ¶ 81). She further contends that these policies "operated to exclude only female employees from management and other positions within PennWest and to lead to and cause the termination of

female employees." (*Id.* at ¶ 82). In this Court's estimation, such vague and conclusory allegations are insufficient to constitute an actionable facially neutral employment practice which has an <u>unintentional</u> disparate impact on women. *See Ladd v. Boeing Co.*, 2008 WL 375725, at *15 (E.D. Pa. Feb. 8, 2008); *Knox v. PPG Indus., Inc.*, 2016 WL 279004 at *6-7 (W.D. Pa. Jan. 22, 2016) ("While Plaintiff does employ some disparate-impact buzzwords in her complaint – e.g., she claims that PPG's policies 'adversely impacted' women – these 'are bare legal conclusions, not facts[,]' […], and thus cannot carry Plaintiff's claim over the plausibility threshold."). The purported existence of a facially neutral policy is also undermined by the more specific allegations in her Complaint which are incorporated by reference into the disparate impact claim and make clear that the policy of which Plaintiff complains was one of intentional discrimination against women. (Docket No. 1 at ¶ 81). To this end, Plaintiff states that "Gaier effectively employs a patently discriminatory policy that women cannot work in management positions or positions in which they will work closely with Gaier." (Docket No. 1 at ¶¶ 64; 81). All told, Plaintiff has alleged a straightforward case that Defendants engaged in <u>intentional</u> discrimination. Therefore, Plaintiff has failed to state a disparate impact claim and Defendants' motion to dismiss will be granted. *See Pa.*, 110 F. Supp. 3d at 553.

  *D. Individual liability under Title VII and the PHRA*

  Defendants argue that neither Title VII nor the PHRA permit Plaintiff to recover against Defendant Gaier in his individual capacity. (Docket No. 14 at 15). Specifically, Defendants argue that Title VII precludes recovery completely and that the PHRA allows recovery only where a plaintiff establishes a defendant "aided and abetted" the discriminatory conduct, which Plaintiff has not properly alleged. (*Id.* at 16). Plaintiff appears to concede that her claim against

Defendant Gaier is insufficient under Title VII but continues to maintain that her claim against him is supportable under the PHRA. (Docket No. 19 at 14-15).

It is well established that "individual employees are not liable under Title VII." *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). However, the PHRA permits individual liability, but only where the employee "aid[s], abet[s], incite[s], compel[s] or coerce[s] the doing of any act declared . . . to be an unlawful discriminatory practice." 43 PA. STAT. AND CONS. STAT. ANN. § 955(e). Thus, supervisory employees may be held liable for aiding and abetting a violation of the PHRA. *See id.*; *Dici v. Commw. of Pa*, 91 F.3d 542, 553 (3d Cir. 1996). A person is "[a] 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, __ U.S. __, 133 S.Ct. 2434, 2439 (2013).

Plaintiff pled that Defendant Gaier was the President of PennWest and that he was personally responsible for her termination. (Docket No. 1 at ¶¶ 8, 10). As discussed above, two of Plaintiff's gender discrimination claims are sufficiently pled to survive a 12(b)(6) motion and these same facts amply support her PHRA claim against Defendant Gaier in his individual capacity for aiding and abetting such violations. *See Jordan v. Mel Blount Youth Home of Pa.*, 2008 WL 2446334, at *1, 7 (W.D. Pa. June 16, 2008) (unpublished).

*E. Leave to Amend*

The Court's last inquiry is whether the dismissal of the claims of disparate impact and individual liability under Title VII against Defendant Gaier should be with or without prejudice. As stated above, Title VII is unequivocal in that there is no cause of action against individual employees. *See Emerson,* 296 F.3d at 190. Therefore, this claim is dismissed, with prejudice. As to the disparate impact claim, Defendants alerted Plaintiff to the deficiency of her pleading in

their Motion to Dismiss. (Docket No. 14). In response, Plaintiff failed to supply an amended complaint or proffer any facts that would support her disparate impact claim. (Docket No. 19). At most, Plaintiff attempted to clarify the scope of the alleged violative employment policy but it is clear that any amendment of her disparate impact claim to incorporate this clarification would be futile because it would be based on a set of vague and conclusory facts that would not defeat another motion to dismiss. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (explaining "[a]n amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted"). Accordingly, Plaintiff's claim for disparate impact will be dismissed, with prejudice.

VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted, in part and denied, in part. Specifically, Defendants' Motion is granted as to Plaintiff's claim for individual liability under Title VII against Gaier and as to Count Three. The remainder of Defendants' Motion is denied.

An appropriate Order follows.

                                             */s/ Nora Barry Fischer*
                                             Nora Barry Fischer
                                             United States District Judge

Dated: October 2, 2017

cc/ecf: All counsel of record.